UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ELLE CARMICHAEL, as Administratrix of
the Estate of Romona Moore,

               Plaintiff,                      MEMORANDUM & ORDER

     -against-                                  06 CV 1913 (NG) (VVP)


CITY OF NEW YORK, ROBIN D.
WALLACE, ADRIANNE R. WALLACE,
KAYSON PEARSON, and TROY HENDRIX

               Defendants.
----------------------------------------------------------------X

**GERSHON, United States District Judge:**

       Plaintiff Elle Carmichael brings this action under 42 U.S.C. § 1981 and § 1983 on behalf of her deceased daughter, Romona Moore, alleging that defendant City of New York ("defendant City") deprived Moore of her constitutional rights by selectively denying her the benefit of its protective services on the basis of her race. Defendant City brings this motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## FACTS

       The following facts are alleged in the Complaint and taken as true for purposes of this motion. On the morning of April 25, 2003, plaintiff reported her daughter missing to the New York City Police Department's ("NYPD") 67th Precinct in Brooklyn, New York. Officer Monique Richard and Sergeant Alvin Gomez responded to plaintiff's call and, despite plaintiff's statement that it was "unlike her daughter to be away so long without saying anything," they advised her to call back after another 24 hours. Compl. ¶ 10. At approximately 7:10 P.M. that night, Detective Henn advised plaintiff that she should not have been allowed to file a missing persons report. The

1

next day, on April 26, 2003, Detective Henn further informed plaintiff that nothing could be done to investigate her daughter's disappearance, and the NYPD closed the case.

Upon plaintiff's persistence, the NYPD reopened the case and assigned Detective Wayne Carey to investigate Moore's disappearance on April 28, 2003. By the next day, Detective Carey informed plaintiff that the NYPD had a lead in the investigation, though he did not tell her any details about the lead, and instead stated several times to her that Moore was "probably off somewhere with a boyfriend."[1] *Id.* ¶ 15. Detective Carey, however, knew that a 15-year old girl who had been sexually assaulted by defendants Kayson Pearson and Troy Hendrix had informed the police upon her escape from Hendrix's residence at 5807 Synder Avenue in Brooklyn, New York, that her assailants had threatened her by telling her that they had killed another girl in the house. According to plaintiff, the NYPD had also received 911 calls complaining of screaming around the 5807 Synder Avenue residence during the time her daughter was still alive. It was later discovered that Moore was sexually assaulted for three days before she was murdered on these premises by the same two individuals on April 28, 2003.[2]

On April 30, 2003, police officers Michael Hinrichs, Michael Hopkins, and Eric Torres came to plaintiff's residence with a search dog, and, after searching 5807 Synder Avenue, the officers informed plaintiff that their efforts failed to turn up any results. On May 10, 2003, in response to

---

[1] According to the Complaint, Detective Carey expressed his doubts about the investigation on several other occasions. At some point during the investigation, Detective Carey asked plaintiff whether she wanted him "to pull her daughter out of a hat" and stated that the investigation should not have gone forward at all. *Id.* ¶ 18. After the April 30, 2003 search of Hendrix's residence, Detective Carey also asked plaintiff if her daughter was pregnant, insinuating that Moore was not missing but had reason to leave home. And, on May 8, 2003, Detective Carey told a *New York Post* reporter that she should not to waste her time on a disappearance story because Moore had run away from home.

[2] Defendant City admits in its Answer that Pearson and Hendrix were prosecuted and convicted for charges regarding Moore's rape and murder.

leaflets distributed by plaintiff and her relatives, a male individual called plaintiff's relatives and informed them that Moore's body was under an ice cream truck located at 5479 Kings Highway in Brooklyn, New York.  Police officers reported to the premises and located Moore's body there.

Plaintiff alleges that the NYPD failed to properly investigate the crime scene at 5807 Synder Avenue for physical evidence of Moore's presence and that "[t]his action arises . . . from acts of racial and national origin discrimination committed by defendant City . . . against the decedent, Romona Moore, to wit, the deliberate refusal by defendant . . . of not making a prompt investigation of missing persons claims of African-Americans, while making a prompt investigation for white or Asian individuals, despite having official policies and procedures to investigate unusual or unaccountable absences."  *Id.* ¶ 1.  Plaintiffs bring two Counts against defendant for its alleged violations of § 1981 and § 1983, and defendant brings this motion for judgment on the pleadings, requesting dismissal of all claims asserted against it.[3]

## DISCUSSION

A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss.  *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).  Accordingly, plaintiff's factual allegations must be accepted as true, and the court must draw all reasonable inferences in favor of plaintiff.  *Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Thomas v. City of New York*, 143 F.3d 31, 37 (2d Cir. 1998).  The court's function is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is

---

[3] During the pre-motion conference, the court directed defendant to address only whether the Complaint states a cognizable claim under § 1983 and not whether plaintiff can establish the existence of a "policy or custom" to establish municipal liability under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).  Since it is unnecessary to conduct a full *Monell* analysis unless plaintiff can allege a deprivation of a right secured by the Constitution or federal statute, the court determined to first consider whether plaintiff can satisfy this threshold requirement.

3

legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). As the Supreme Court recently held, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1964 (2007) (internal quotation marks, citations, and alterations omitted). Indeed, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974. This "plausibility standard" is a flexible one, "oblig[ing] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

In order to maintain an action under § 1983, which governs civil rights actions against persons acting under color of state law, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds by *Daniel v. Williams*, 474 U.S. 327 (1986)). It is axiomatic that a successful § 1983 claim requires more than a showing that plaintiff has been wronged at the hands of a state or municipal officer. Rather, a plaintiff must allege that "[s]he has been deprived of some right secured by federal statute or the United States Constitution." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985).

Here, the fundamental disagreement between the parties concerns what constitutional right underlies plaintiff's § 1983 claim. Defendant reads plaintiff's allegation that its conduct "resulted in the deprivation of the civil rights of Romona Moore, as a direct result of clear racially motivated

discrimination" as attempting to state a claim under the Due Process Clause of the Fourteenth Amendment. Defendant treats plaintiff as essentially claiming that the NYPD's failure to promptly investigate her missing persons reports deprived Moore of her right to be protected against the private acts of violence committed by defendants Kayson and Hendrix. Based upon the Supreme Court's decision in *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 197 (1989), that a "State's failure to protect an individual against private violence" does not constitute a violation of the Due Process Clause, defendant argues that plaintiff cannot, as a matter of law, state a claim under § 1983.

The problem with the defendant's argument for dismissal is that it mischaracterizes plaintiff's claim. Plaintiff's claim is that Moore was "selectively denied the protective services of Defendant City on the basis that she was African-American" in violation of the Equal Protection Clause. Pf. Opp. Br. at 2-3; *see* Compl. ¶¶ 1, 11. Defendant maintains in its reply brief that it is "of no moment" whether plaintiff is asserting an equal protection right and argues that plaintiff must still establish that defendant City had a duty to protect Moore from private acts of violence before proceeding with an equal protection analysis. Dfs. Reply Br. at 2. Defendant's argument is incorrect in at least two respects. First, the absence of a due process claim does not preclude plaintiff from bringing an equal protection claim. Second, plaintiff's equal protection claim is not premised on the duty defendant asserts. Plaintiff is alleging that, if defendant City offers the protective service of promptly investigating missing persons reports, it must do so without selectively denying individuals of that benefit on the basis of race. A violation of that duty, if proved, establishes a claim under the Equal Protection Clause. *See DeShaney*, 489 U.S. at 197 n.3 (citing *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)).

Here, plaintiff has alleged that defendant City deliberately refused to make "a prompt

5

investigation of missing persons claims of African-Americas, while making a prompt investigation for white or Asian individuals, despite having official policies and procedures to investigate unusual or unaccountable absences." Compl. ¶ 1. The court finds that plaintiff's allegations give defendant fair notice of the basis of her claims and are sufficient under Rules 8(a) and 12 of the Federal Rules of Civil Procedure. Plaintiff is not required to plead "specific facts", especially when those facts are particularly within defendant's knowledge and control. *See Twombly*, 127 S. Ct. at 1965; *Boykin v. KeyCorp*, 2008 U.S. App. LEXIS 6401, at *27-39 (2d Cir. 2008).[4] Defendant City's motion for judgment on the pleadings is therefore denied.

## CONCLUSION

For the reasons discussed above, defendant City's motion for judgment on the pleadings is denied. The parties are directed to proceed with pretrial proceedings and discovery under the supervision of Magistrate Judge Pohorelsky.

**SO ORDERED.**

/s
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
      March 31, 2008

---

[4] Defendant City argues that plaintiff's § 1981 claim should be dismissed, but raises no arguments other than the arguments it raises as to the § 1983 claim. Because the court finds that plaintiff has adequately pled a § 1983 claim, and defendant provides no other grounds for dismissal, the court does not reach the issue of whether plaintiff has adequately pled a § 1981 claim.