

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

85 Fifth Avenue
New York, NY 10003
Tel 212.257.6800
Fax 212.257.6845
www.twglaw.com

**Kenneth P. Thompson**
kthompson@twglaw.com

April 5, 2010

**VIA ECF**

The Hon. Viktor V. Pohorelsky
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    <u>Elle Carmichael v. City of New York, et al., 06-CV-1913 (NG)(VVP)</u>

Dear Judge Pohorelsky:

We represent Plaintiff Elle Carmichael in the above-referenced case. I write to request respectfully that the Court compel Defendants to respond to Plaintiff's discovery requests. More specifically, Defendant City of New York (the "City") has refused to respond to the majority of Plaintiff's document requests and interrogatories, while the individual defendants, Robin D. Wallace and Adrianne R. Wallace (the "Wallace Defendants") have failed to respond at all to Plaintiff's discovery requests.[1]

**Background**

Ms. Carmichael is the mother of Romona Moore, who, on April 24, 2003, was abducted by Defendants Kayson Pearson and Troy Hendrix, held captive for several days during which time she was repeatedly raped, tortured, and, ultimately, brutally murdered. At the time of her disappearance, Ms. Moore was a 21 year old student at Hunter College, and lived with her

---

[1] A copy of Defendant City's Responses and Objections to Plaintiff's First Set of Interrogatories and Request for Production of Documents is attached as Exhibit A and copies of Plaintiff's First Request for the Production of Documents and Plaintiff's First Set of Interrogatories to Defendants Robin D. Wallace and Adrianne R. Wallace are attached as Exhibit B.

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

The Hon. Viktor V. Pohorelsky
April 5, 2010
Page 2


parents in the East Flatbush neighborhood of Brooklyn, a predominantly African-American and immigrant community.

The crux of this case is Ms. Carmichael's claim, asserted under 42 U.S.C. §§ 1981 and 1983, that the New York City Police Department (the "NYPD") delayed in investigating Ms. Moore's disappearance because Ms. Moore was African-American. In fact, Ms. Carmichael and members of her community were compelled to start their own search for Ms. Moore because of the NYPD's indifference, and it was not until four days after Ms. Moore was first reported missing that the NYPD commenced its investigation. In contrast, the NYPD has immediately undertaken high profile searches for White individuals similarly situated to Ms. Moore, such as in the investigations of the disappearances of Svetlana Aronov and Imette St. Guillen, both whom went missing at or around the same time as Ms. Moore.

In Ms. Moore's case, the NYPD's discriminatory treatment of African-Americans had particularly tragic consequences since Ms. Moore was held captive for several days before she was murdered. While she was being held, there was at least one witness who saw her alive and others who heard screams from the location where she was being held. Had the NYPD treated Ms. Moore's case like those of White missing persons, it is possible her murder could have been prevented.

## Discovery Dispute

The City's responses to Plaintiff's discovery requests are deficient on a massive scale that, if permitted to stand, would thoroughly undermine Plaintiff's ability to prosecute her case. In response to Plaintiff's 51 document requests, the City has produced less than 800 pages of documents. The bulk of the City's production consists of typed police reports, with the names of everyone except police officers redacted, and photos of the crime scene where Ms. Moore's body was found. As detailed below, the City has failed or refused to produce whole classes of documents relevant to Plaintiff's claims based on objections that are without any merit. Moreover, the City has asserted objections to numerous document requests and interrogatories on the basis of different privileges, but has failed to produce a privilege log that would indicate whether any responsive documents or information actually exist.

In determining whether discovery should be compelled, Courts are guided by Fed. R. Civ. P. 26(b)(1), which provides that parties may obtain discovery "of any nonprivileged matter that is relevant to any party's claim or defense . . . ." Indeed, in civil actions "no showing of need beyond relevancy is necessary." *Kitevski v. City of N.Y.*, 04 Civ. 7402, 2006 U.S. Dist. LEXIS 11017, at *9-10 (S.D.N.Y. March 16, 2006).

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

The Hon. Viktor V. Pohorelsky
April 5, 2010
Page 3

## The City's Discovery Deficiencies

The deficiencies of the City's discovery responses are set forth below. Where interrogatories and document requests seek similar information, they are grouped together.

### Interrogatory No. 4 and Document Request Nos. 23 and 30

In Interrogatory No. 4 and Document Request No. 30, Plaintiff seeks information related to the City's communications with the media concerning Ms. Moore's disappearance. In Document Request No. 23, Plaintiff seeks documents concerning the participation of members of the public in the investigation of Ms. Moore's disappearance. The information sought by these requests is relevant to determining the extent of the City's efforts, if any, to obtain the media's and public's assistance in helping to find Ms. Moore. Among Plaintiff's claims is that the NYPD only seeks the assistance of the media and the public in a high-profile way when the missing person is White and that, in Ms. Moore's case, the NYPD specifically told members of the media that the story of her disappearance was not worth following. The importance of the media's involvement was even highlighted by one of Ms. Moore's killers who, in front of another girl he kidnapped and raped subsequent to Ms. Moore, expressed surprise at the lack of media attention to Ms. Moore. The requested information would not be burdensome for the City to produce, and is clearly limited to the narrow time period in which Ms. Moore's investigation was ongoing.

Additionally, the City objects to Interrogatory No. 4 and Document Request No. 30 on the grounds, among others, that the information sought is equally available to all parties. Contrary to the City's objection, discovery of the City's contacts with the media regarding Ms. Moore's disappearance are not available equally to all parties. The City has within in its possession the identities of its employees or representatives who spoke with the media concerning Ms. Moore. For Plaintiff to obtain such information, she would likely have to subpoena media outlets, which can be expected to fight vigorously any subpoena in order to protect the identities of their sources.

### Interrogatory No. 16 and Document Request Nos. 37-41, 44-45

In these requests, Plaintiff seeks information on any complaints of discrimination and harassment on the basis of race and/or color related to the NYPD's investigations of missing persons cases and concerning the specific police officers involved in investigating Ms. Moore's disappearance and murder. The requested information is obviously relevant to Plaintiff's claims of disparate treatment, and would provide not only directly admissible evidence but also information that would allow Plaintiff to pursue other leads.

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

The Hon. Viktor V. Pohorelsky
April 5, 2010
Page 4


In its response, the City objects that the requests relate to unsubstantiated allegations. There is no basis for the City's objection since, whether or not the allegations are substantiated, the requested information would nonetheless assist Plaintiff in prosecuting her claims. *See Unger v. Cohen*, No. 86 Civ. 5048, 1989 U.S. Dist. LEXIS 3579, at *8-9 (S.D.N.Y. April 6, 1989) (ordering production of civilian complaint review board records, regardless of whether substantiated, because they are an "obvious source of leads which resourceful counsel may pursue").

**Interrogatories Nos. 17-18 and Document Requests Nos. 46-47**

In these requests, Plaintiff seeks information regarding the number of missing White persons versus the number of missing persons of color, the number of detectives assigned to investigate missing persons cases, and the resources expended by the NYPD in conducting the investigations of missing White persons versus missing people of color. The City poses various boilerplate objections, as well as an objection that the requests potentially invade the privacy rights of third parties.

The requested information is obviously relevant to Plaintiff's claim that the City did not treat Ms. Moore's disappearance the same as it treated the disappearance of White people. The information requested would provide a statistical basis for Plaintiff's claims, and should therefore be produced. The City's objections that the discovery requested is vague and overbroad are without merit, as the requests are narrowly tailored to obtain relevant information, and the number of missing persons likely is not so numerous as to make a search for the requested information burdensome. The City's privacy objection should be rejected since the information requested concerns the NYPD's own efforts and its expenditure of resources. No third-parties' privacy rights would be at issue.

**Interrogatories Nos. 19-21 and Document Requests Nos. 48-50**

In these discovery requests, Plaintiff seeks information on the NYPD's efforts to investigate the disappearances of women – Svetlana Aronov, Imette St. Guillen, and Tiana Rice – similarly situated to Ms. Moore. The City makes baseless objections on the grounds that the requests would invade the privacy of nonparties and potentially seek information protected by the Health Insurance Portability and Accountability Act ("HIPAA").

Clearly, the information requested is relevant to Plaintiff's claim that the City treats missing persons investigations of African-Americans differently than those of White missing persons.

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

The Hon. Viktor V. Pohorelsky
April 5, 2010
Page 5


Accordingly, the investigations of Ms. Aronov and Ms. Guillen, who were White, and Ms. Rice, who was Black, serve as useful comparators to Ms. Moore's investigation. There is no basis, either, for the City's vague privacy and HIPAA objections – the City has not indicated what particular responses would violate nonparties' privacy or HIPAA rights – and any concerns regarding privacy may be addressed by a protective order.

**Interrogatory No. 22**

In this interrogatory, Plaintiff requests that the City identify all members and/or employees of the NYPD's Missing Persons Bureau (the "MPB") in 2003. The City objects on the grounds that the request seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence, that it invades the privacy rights of nonparties and is subject to the official information privilege.

As an initial matter, the request for the identities of the members of the MPB is relevant to Ms. Carmichael's claims in that the identities of the individuals in the MPB can be compared to the individuals listed in the police reports produced by the City to determine who, if any, was a member of the MPB. Further, a response to the interrogatory would identify potential individuals Plaintiff may be able to depose to obtain more information in support of her claims. The City's objection that the interrogatory invades the privacy rights of non-parties is nonsensical since the interrogatory explicitly states that it seeks the identities of the *NYPD's* employees and members.

Further, the City's claim of "official privilege" with respect to the information requested also fails. First, the City has not produced a privilege log. Second, in asserting the privilege, the City must "demonstrate a substantial threshold showing of specific harm that may accrue from the disclosure of" the requested discovery. *Wisniewski v. Claflin*, CV 05-4956, 2007 U.S. Dist. LEXIS 27850, at *7 (E.D.N.Y. April 16, 2007) (internal quotations omitted). The City can make no such threshold showing. It is impossible to understand how providing the identities of the members of the MPB could cause substantial harm to the City.

**Document Request No. 7**

In this request, Plaintiff seeks the identities of persons interviewed by the NYPD in connection with its investigation of Ms. Moore's disappearance and murder. In response, the City refers Plaintiff to a portion of the documents it has produced, which, as noted above, contain almost exclusively, only the typewritten police reports related to the investigation of Ms. Moore's

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

The Hon. Viktor V. Pohorelsky
April 5, 2010
Page 6

disappearance and murder. The City has redacted all names of individuals interviewed by the NYPD in connection with its investigation.

The identities of the individuals interviewed by the NYPD in its investigation are relevant to determining the quality and depth of the NYPD's investigation. Individuals who gave information to the NYPD also likely could provide leads for Plaintiff to pursue in further support of her claims. Again, the City's objections on the grounds of vagueness and that the request is overbroad are without merit as the request is clearly narrowly tailored. Further, as noted above, the City's objection based on the privacy rights of nonparties can be addressed with a protective order.

**Document Requests Nos. 27-29**

In these requests, Plaintiff seeks documents concerning interviews with any of the individual defendants, charges brought against them, and documents concerning their prosecutions. While the City has produced a portion of the documents related to the prosecution of Defendants Pearson and Hendrix, it has failed to produce any notes of police officers, any arrest logs and booking paperwork, and, with respect to the Wallace Defendants, any documents whatsoever.

The City's boilerplate objections are without merit. The request for documents related to the investigation, arrest and prosecution of the individual defendants is relevant to determining the scope of the City's investigation into Ms. Moore's disappearance and its efforts in finding her. Further, police officers' notes and the arrest logs concerning the individual defendants can show the intent and state of mind of the City's agents and employees in searching for Ms. Moore.

**Document Request No. 32**

In this request, Plaintiff seeks documents concerning the NYPD's policies and procedures related to missing persons investigations. The City states various boilerplate objections, and also asserts "deliberative process" and "law enforcement" privileges.

The NYPD's policies and procedures concerning its investigations of missing persons are obviously relevant – and central – to Plaintiff's claims that the NYPD applies discriminatory policies and practices in its investigations of missing persons. It would be impossible to determine if the policies and practices were applied equally across different races without knowing what the policies and practices are. There is thus no basis for the City to refuse to produce the requested documents.

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

The Hon. Viktor V. Pohorelsky
April 5, 2010
Page 7


With respect to the City's objections based on privilege, again, it must first be noted that no privilege log has been produced that would aid in determining what the responsive documents would be. Further, the law enforcement privilege asserted by the City is a qualified privilege, not an absolute one, requiring a balancing of the public interest in maintaining the privilege and the need of the litigant for access to the privileged information. *See Kitevski*, 2006 U.S. Dist. LEXIS 11017, at *9 (compelling production of NYPD Internal Affairs Bureau records in a Section 1983 action). "When the records are both relevant and essential to the presentation of the case on the merits, the need for disclosure outweighs the need for secrecy, and the privilege is overcome." *Id*. The assertion of a law enforcement privilege is particularly weak in cases brought, as here, "pursuant to federal statutes whose central purpose is to protect citizens from abuse of power by state and local authorities." *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987). The City's assertion of the law enforcement privilege therefore must fail because the requested documents are relevant and essential to Plaintiff's claims.

Likewise, the City's assertion of the deliberative process privilege should also be rejected. The deliberative process privilege is also a qualified privilege intended to protect collateral government deliberations; "[h]owever, if the party's cause of action is directed at the government's intent in rendering its policy decision and closely tied to the underlying litigation then the deliberative process privilege evaporates." *Children First Foundation, Inc. v. Martinez*, Civ. No. 1:04-CV-0927, 2007 U.S. Dist. LEXIS 90723 (N.D.N.Y. Dec. 10, 2007). Here, even if the documents sought were deliberative in nature, they should be produced because they are "closely tied" to Plaintiff's claims.

Finally, the City has asserted that it is continuing to search for documents and information responsive to numerous requests. *See* Inter. Nos. 10, 13-15; Doc. Req. Nos. 9-16, 21, 31, 33-34, 42-43. However, the City has yet to provide responses to the noted requests.

For the foregoing reasons, Plaintiff respectfully requests that the City be ordered to supplement its production and for the Wallace Defendants to respond to Plaintiff's discovery requests.

Respectfully Submitted,

/s/ Kenneth P. Thompson

Kenneth P. Thompson

cc:     Shawn Fabian (by email)
        A. Lorenzo Bryan (by email)