UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

ELLE CARMICHAEL, as Administratrix of the Estate of
Romona Moore,

                                        Plaintiff,

                                                        06-CV-1913 (NG) (VVP)

                        -against-

THE CITY OF NEW YORK, et al.,

                                        Defendants.

---------------------------------------------------------------------- x


## DEFENDANT CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 788-1599


Of Counsel:

Arthur G. Larkin

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT

    I.      Governing Standards ........................................................................................2

    II.    Plaintiff Cannot Demonstrate "State Action" ................................................3

    III.   Plaintiff Has No Constitutional Right to an
          "Adequate" Police Investigation ....................................................................9

    IV.   Plaintiff's Equal Protection Claim Should be
          Dismissed on the Merits ...............................................................................12

          A.   Plaintiff Cannot Prove an Underlying Violation
               of the Equal Protection Clause .............................................................. 12

          B.   Plaintiff Cannot Establish a Municipal "Policy"
               or "Custom" ........................................................................................... 15

          C.   Plaintiff Cannot Prove Causation.......................................................... 17

    V.    Any Claim Brought Under Section 1981 Should Also
          be Dismissed ................................................................................................19

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                              <u>Pages</u>

*Ackerman v. Oryx Communications, Inc.*,
   810 F.2d 336 (2d Cir. 1987) ...................................................................................16

*Albert v. Carovano*,
   851 F.2d 561 (2d Cir. 1988) ..............................................................................15, 19

*American Manufacturers Mutual Insurance Co. v. Sullivan*,
   526 U.S. 40 (1999) ............................................................................................. 4-5

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1996) ...............................................................................................3

*Blum v. Yaretsky*,
   457 U.S. 991 (1982) ...............................................................................................6

*Board of County Commissioners v. Brown*,
   520 U.S. 397 (1997) ..........................................................................................7, 12

*Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)....................................................10

*Boucher v. Suzuki Motor Corp.*,
   73 F.3d 18 (2d Cir. 1996) ..............................................................................17, 18, 19

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*,
   531 U.S. 288 (2001) ...............................................................................................6

*Brown v. City of Oneonta*,
   221 F.3d 329 (2d Cir. 1999) ...................................................................................19

*Cash v. County of Erie*,
   654 F.3d 324 (2d Cir. 2011) .................................................................................7, 15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...............................................................................................2

*City of Los Angeles v. Heller*,
   475 U.S. 796 (1986) ..............................................................................................12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) .........................................................................................16, 19

*DeStiso v. Cook*,
   691 F.3d 226 (2d Cir. 2012) ...................................................................................12

**Cases**                                                                                           **Pages**

*First National Bank of Arizona v. Cities Service Co.*,
   391 U.S. 253 (1968) ..................................................................................2

*Five Borough Bicycle Club v. City of New York*,
   684 F. Supp. 2d 423 (S.D.N.Y. 2010) .................................................13

*Galapo v. City of New York*,
   568, 574-5 (1995) .................................................................................10

*Gallo v. Prudential Residential Services, Ltd. Partnership*,
   22 F.3d 1219 (2d Cir. 1994) ..................................................................3

*Gant v. Wallingford Board of Education*,
   195 F.3d 134 (2d Cir.  1999) ............................................................ 12-13

*Grant v. City of Long Beach*,
   315 F.3d 1081 (9th Cir. 2002)
   *as amended*, 2003 Cal. Daily Op. Service 5670 (9th Cir. 2003) ...............18

*Green v. City of New York*,
   465 F.3d 65 (2d Cir. 2006) ............................................................15, 17

*Harlen Associates v. Inc. Village of Mineola*,
   273 F.3d 494 (2d Cir. 2001) ................................................................13

*Harrington v. County of Suffolk*,
   607 F.3d 31 (2d Cir. 2010) ..........................................................9, 10, 11

*Jeffreys v. Rossi*,
   275 F. Supp. 2d 463 (S.D.N.Y. 2003),
   aff'd, 426 F.3d 549 (2d Cir. 2005) ........................................................2

*Kazanoff v. United States*,
   945 F.2d 32 (2d Cir. 1991) ..................................................................17

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ..............................................................................3

*Miner v. Clinton County*,
   541 F.3d 464 (2d Cir. 2008) ................................................................13

*Monell v. Department of Social Services*,
   436 U.S. 658 (1978) ...............................................................3, 8, 12, 17

*Patterson v. County of Oneida*,
   375 F.3d 206 (2d Cir. 2004) ................................................................20

**Cases**                                                             **Pages**

*Phillip v. University of Rochester*,
316 F.3d 291 (2d Cir. 2003) ...................................................................20

*Rendell-Baker v. Kohn*,
457 U.S. 830 (1982) ...............................................................................4

*Reynolds v. Barrett*,
685 F.3d 193 (2d Cir. 2012) .......................................................13, 15, 19

*Santiago v. New York City Housing Authority*,
63 N.Y.2d 761 (1984) ...........................................................................17

*Savino v. City of New York*,
331 F.3d 63 (2d Cir. 2003) .....................................................................2

*Schlein v. Milford Hospital, Inc.*,
561 F.2d 427 (2d Cir. 1977) .............................................................4, 5, 6

*Segal v. City of New York*,
459 F.3d 207 (2d Cir. 2006) ..................................................................12

*Sybalski v. Independent Group Home Living Program, Inc.*,
546 F.3d 255 (2d Cir. 2008) .............................................................4, 5, 6

*Tancredi v. Metropolitan Life Insurance Co.*,
316 F.3d 308 (2d Cir.), cert. denied, 539 U.S. 942 (2003)..................4, 5, 6

*Taylor v. Consolidated Edison Co.*,
552 F.2d 39 (2d Cir. 1977) .....................................................................4

*Town of Castle Rock v. Gonzales*,
545 U.S. 748 (2005) .............................................................................10

*Wray v. City of New York*,
490 F.3d 189 (2d Cir. 2007) ..................................................................17

*Yick Wo v. Hopkins*,
118 U.S. 356 (1886) ..............................................................7, 8, 9, 11, 17

**Statutes**

42 U.S.C. § 1981.......................................................................15, 19, 20

42 U.S.C. § 1983.............................................1, 3, 4, 5, 6, 7, 9, 12, 13, 17, 19, 20

**Statutes** **Pages**

Fed. R. Civ. P. 56(c) ........................................................................................................2

Fed. R. Evid. 702 ....................................................................................................16, 19

Rule 56.1 ............................................................................................................2, 13, 14

**Other Authorities**

Cong. Globe, 42d Cong., 1st Sess., 795 (1871) ..............................................................8

**Preliminary Statement**

By this lawsuit, plaintiff Elle Carmichael seeks to impose municipal liability on the City of New York under Section 1983, on the grounds that the City's unconstitutional practices allegedly failed to prevent two individuals, Troy Hendrix and Kaysan Pearson, from kidnapping, raping and murdering her daughter Romona Moore. She alleges that she reported her daughter, a 21-year old college student, missing on the morning of Friday, April 25, 2003, and that the NYPD did not open an investigation into her complaint until Monday, April 28, 2003, by which time Ms. Moore was already dead. She does not sue any individual police officer, but seeks to hold the City liable on the grounds that, as a matter of policy or custom, the City disregards missing persons complaints filed by black citizens, but promptly investigates missing persons complaints filed by whites and others, in violation of the Equal Protection clause of the Fourteenth Amendment. As set forth below, while this case is undeniably tragic, plaintiff's complaint should be dismissed.

First, plaintiff cannot show that the injuries for which she sues are the result of "state action." Rather, as a matter of law, those injuries are the result of the criminal conduct of Pearson and Hendrix, two non-state actors. Second, under controlling circuit authority, plaintiff cannot assert entitlement to a police investigation of her complaint, much less a police investigation that conforms to any particular standard. Third, and finally, on the merits, plaintiff cannot prove intentional discrimination by any City employee, much less a pattern or practice of intentional discrimination that is persistent or widespread. The evidence in this case, viewed in the light most favorable to plaintiff, shows that the police exercised discretion in deciding not to investigate plaintiff's complaint until a few days had elapsed, and while the results in this case were unfortunate, we submit that the City cannot be held legally responsible for them.

The relevant facts are set forth in defendants' accompanying Rule 56.1 Statement (hereafter "Rule 56.1 Stmt., ¶ ___").

## Argument

### I.   Governing Standards

In order to be entitled to summary judgment, the moving party must demonstrate that "no genuine issue of material fact exists." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 473 (S.D.N.Y. 2003), *aff'd*, 426 F.3d 549 (2d Cir. 2005); *see* Fed. R. Civ. P. 56(c). Once the moving party has discharged its burden, the non-moving party "must raise a genuine issue of material fact" that requires a trial. *Id.* In order to raise a genuine issue of fact, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts, … and she may not rely on conclusory allegations or unsubstantiated speculation." *Id.* at 473-74 (citations and internal quotes omitted). Rather, the non-moving party "must produce admissible evidence that supports her pleadings." *Id.* (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289-90 (1968)). "The mere existence of a scintilla of evidence supporting the non-movant's case is … insufficient to defeat summary judgment." *Id.* (quoting *Niagara Mohawk Power Corp. v. Jones Chemical, Inc.*, 315 F.3d 171, 175 (2d Cir. 2003)). "Summary judgment is appropriate, … if the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, … or if it is based purely on conjecture or surmise." *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003).

A motion for summary judgment requires the party with the burden of proof at trial to "make a showing sufficient to establish the existence of [each] element to that party's case, … since a complete failure of proof concerning an essential element of … [the] case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Applying these rules, the Second Circuit has stated:

> [T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.  When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

*Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of <u>material</u> fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1996) (emphasis added).

## II.  <u>Plaintiff Cannot Demonstrate "State Action"</u>

Section 1983, also known as the Civil Rights Act of 1871 (the "Act"), provides in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, …." 42 U.S.C. § 1983 (West 2013).  The Act was adopted after the Civil War to protect newly freed slaves in the South from constitutional deprivations visited on them by state officials, and for the first time allowed individuals to sue local officials for such constitutional deprivations.  *See Monell v. Dept. of Social Services*, 436 U.S. 658, 685-90 (1978) (discussing legislative history of the Act).  It was intended to enforce the provisions of the Fourteenth Amendment.  *Id*. at 686-87.

Consistent with this purpose, the Act permits legal action only against persons who act

under "color" of state law, i.e., those whose conduct represents "state action." *Sybalski v.*

*Independent Group Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (citation

omitted); *see Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir.), *cert. denied*,

539 U.S. 942 (2003) ("In cases under § 1983, 'under color' of law has consistently been treated

as the same thing as the 'state action' required under the Fourteenth Amendment") (quoting

*Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)); *Taylor v. Consolidated Edison Co.*, 552 F.2d

39, 32 (2d Cir. 1977) (state action requirement "defines the point at which constitutional

obligations must be imposed").

The conduct of private, non-state actors does not constitute "state action" except in the

following limited circumstances:

> [W]hen … (1) the entity acts pursuant to the coercive power of the state or is controlled
> by the state ("the compulsion test"); (2) when the state provides significant
> encouragement to the entity, the entity is a willful participant in joint activity with the
> state, or the entity's functions are entwined with state policies ("the joint action test" or
> "close nexus test"); or (3) when the entity has been delegated a public function by the
> state ("the public function test").

*Sybalski*, 546 F.3d at 257 (citations and internal quotation marks omitted).  In order to bring the

conduct of private, non-state actors within the ambit of "state action," the plaintiff must plead

and prove "that the state was involved 'with the *activity that caused the injury*' giving rise to the

action."  *Id.* (quoting *Schlein v. Milford Hospital, Inc.*, 561 F.2d 427, 428 (2d Cir. 1977))

(emphasis in original).  "It is not enough … for a plaintiff to plead state involvement in '*some*

*activity* of the [non-state actor] alleged to have inflicted injury upon a plaintiff.'"  *Id.* (quoting

*Schlein*, *supra*) (emphasis in original).  *See Tancredi*, 316 F.3d at 312 ("When analyzing

allegations of state action, we begin 'by identifying the specific conduct of which the plaintiff

complains'") (quoting *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 51

- 4 -

(1999)); *Schlein*, 561 F.2d at 428 (in order to implicate Section 1983, "the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury").

Here, the "activity that caused the injury" to Romona Moore, *see Sybalski*, 546 F.3d at 257, was the criminal conduct of Troy Hendrix and Kaysan Pearson: Both men were convicted of kidnapping and killing her, and are serving life sentences for these crimes. Plaintiff cannot show that the City compelled them to commit the crime, or that the City was in any way a joint participant in the criminal activity, or that the City delegated any functions to them. *See Sybalksi*, 546 F.3d at 257. Plaintiff cannot even show that the City was, in any way, involved in "some activity" undertaken by Hendrix or Pearson in furtherance of their crimes, *see id.*, let alone the activity that caused her injury. Plaintiff, therefore, cannot show that her injuries are the result of any "state action," and for this reason she cannot establish Section 1983 liability. *Sybalski*, 546 F.3d at 257; *Tancredi*, 316 F.3d at 312.

Plaintiff will argue that the alleged discriminatory act of not investigating her missing persons complaint somehow constitutes state action sufficient to implicate Section 1983 here. But this alleged omission, even if it occurred, was not the "activity that caused the injury" to Ms. Moore or plaintiff. Decisions of the Supreme Court and the Second Circuit make clear that in order to satisfy the "state action" requirement, plaintiff must show that her injuries are the <u>direct</u> result of conduct by state actors, not private citizens. In *Tancredi*, for example, the plaintiff alleged that the MetLife Insurance Company, a heavily regulated business entity, converted from a mutual company to a stock company, violating his rights under the Takings Clause and other constitutional provisions. *Tancredi*, 316 F.3d at 313. The Superintendent of Insurance reviewed

- 5 -

and approved the conversion, *see id.*, but the court nevertheless found that regulatory approval

was not sufficient to constitute state action:

> In the present case, the conduct of which plaintiffs complain is defendants' conversion of MetLife from a mutual company to a stock company. The complaint, however, failed to allege facts that, if established, would show that MetLife's reorganization was conduct that was fairly attributable to the State …. [I]n granting approval, the Superintendent merely found that MetLife met the statutorily mandated standards for such a reorganization and allowed the process to go forward as planned. There is no basis in the complaint's factual allegations for inferring that the State ordered MetLife to convert to a stock company, or that it employed any sort of coercion to control MetLife or induce MetLife to reorganize, or that it became entwined in MetLife's management.

*Id.* at 313.

Similarly, in *Sybalski*, the court found that a group home for disabled adults, which had

imposed restrictions on the plaintiffs' visits with their son who was a resident in the home, did

not engage in "state action" under Section 1983, even though the state granted a license to the

home and imposed heavy regulations on its operation. *Sybalski*, 546 F.3d at 257-59 (citing *Blum*

*v. Yaretsky*, 457 U.S. 991, 1006-7 (1982)). And in *Schlein*, the court rejected plaintiff's claim

that a non-profit hospital, the board of which included the Mayor of Milford, Connecticut, and

which was tax exempt under state and federal law and had the authority, under state law, to

annex land for expansion, engaged in "state action" when it denied his application for privileges

there. The court found that "there is no nexus between the particular activities challenged by the

plaintiff and the State's involvement with the Hospital." *Schlein*, 561 F.2d at 429.

The only way to bring the conduct of private, non-state actors within the reach of Section

1983 is to allege and prove "such a 'close nexus between the State and the challenged action'

that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Tancredi*, 316

F.3d at 312 (quoting *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531

U.S. 288, 295 (2001)). Our research has found no authority suggesting that a Section 1983

plaintiff can ever hold a municipality liable for the actions of independent third-parties who engage in criminal conduct.  Under Section 1983, municipalities cannot even be held liable for the actions of their <u>own</u> <u>employees</u> under the common law *respondeat* doctrine.  *See, e.g., Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) ("municipalities are responsible only for their own illegal acts, and cannot be held vicariously liable under § 1983 for their employees' actions") (citations and internal quotes omitted); *see generally Board of County Commissioners v. Brown*, 520 U.S. 397, 406 (1997) (plaintiff must satisfy "rigorous standards of culpability and causation" in order to hold municipality liable).  Given these strict limits on municipal liability, it is difficult to see how the City can be held responsible for injuries caused by the criminal conduct of third parties over whom it exercised no control.

Denying the City's earlier motion for judgment on the pleadings, this court held that plaintiff had adequately pleaded an Equal Protection Claim:  "Plaintiff is alleging that, if the … City offers the protective service of promptly investigating missing persons reports, it must do so without selectively denying individuals of that benefit on the basis of race.  A violation of that duty, if proved, establishes a claim under the Equal Protection Clause."  (DE 18, at page 5)  In support of this conclusion, the court relied on *Yick Wo v. Hopkins*, 118 U.S. 356 (1886).  Y*ick Wo*, however, concerned state action that was alleged to have <u>directly</u> caused the injury for which the plaintiffs sued, and is therefore distinguishable.  *See Yick Wo*, 118 U.S. at 373-74.

In *Yick Wo*, the city of San Francisco adopted an ordinance requiring all persons who wished to conduct a laundry business to apply for permission to do so from the board of supervisors.  Approximately one hundred fifty (150) Chinese and eighty (80) non-Chinese applied for permits.  Every single one of the Chinese applications was denied, but all of the non-Chinese applications, except one, were granted.  Moreover, two of the Chinese applicants were

imprisoned for running their laundries without permission.  The Court held that the

administration of the ordinance in this manner violated the Equal Protection Clause.

Recognizing that "state action" had directly caused the plaintiffs' injuries, the Court held:

> [T]he facts shown establish an administration directed so exclusively against a particular class of persons as to warrant and require the conclusion, that, whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities charged with their administration, *and thus representing the State itself*, with a mind so unequal and oppressive as to amount to a practical denial *by the State* of that equal protection of the laws which is secured to the petitioners, … by the … the Fourteenth Amendment ….

*Id*. at 373 (emphasis added).  Here, in contrast, the non-state, criminal conduct of Hendrix and

Pearson caused the injury for which plaintiff sues, i.e., the death of her daughter Ms. Moore.  For

this reason, among others (*see* discussion below), *Yick Wo* is inapposite here.

Finally, when the Act was adopted, Congress expressly rejected amendments that would

have imposed liability upon municipalities for the conduct of private, non-state actors within

their borders.  Writing for the majority in *Monell*, after exhaustively reviewing the legislative

history of the Act, and recognizing that Congress had declined to impose *respondeat* liability

upon municipalities, Justice Brennan stated:  "[C]reation of a federal law of *respondeat superior*

would have raised all the constitutional problems associated with the obligation to keep the

peace, *an obligation Congress chose not to impose because it thought imposition of such an

obligation unconstitutional*."  *Monell*, 436 U.S. at 693 (emphasis added); *see also id*. at 692 n.57

(noting that "Congress refused to impose vicarious liability [on municipalities] for the wrongs of

a few private citizens").  Congress rejected these amendments on constitutional grounds.  *See id*.

at 680 ("There is no duty imposed by the Constitution of the United States, or usually by State

laws, upon a county to protect the people of that county against the commission of the offenses

herein enumerated, such as the burning of buildings or any other injury to property or injury to

person") (quoting Cong. Globe, 42d Cong., 1st Sess., 795 (1871) (Rep. Burchard)).

Because the activity that caused Romona Moore's tragic death was not "state action," but instead was the criminal conduct of two private, non-state actors, the City cannot be liable for their conduct as a matter of law and plaintiff's Section 1983 claim should be dismissed.

**III.    Plaintiff Has No Constitutional Right to an "Adequate" Police Investigation**

The only "state action" alleged to support plaintiff's claim is the NYPD's decision not to investigate her complaint until three days after she reported her daughter missing.  However, the Second Circuit has made clear that citizens may not bring any claim under Section 1983 for an allegedly inadequate police investigation.  *Harrington v. County of Suffolk*, 607 F.3d 31 (2d Cir. 2010).[1]  We submit that *Harrington* is more closely analogous to this case than *Yick Wo*, and should be followed here.

In *Harrington*, plaintiffs alleged that the Suffolk County Police Department failed to investigate adequately the auto accident that caused their son's death. Like plaintiff here, the plaintiffs in *Harrington* alleged numerous deficiencies in the investigation, including the officers' failure to ascertain whether the driver of the second vehicle was intoxicated and their incorrect conclusion that the accident was caused by weather conditions.  *Id*. at 33.  Plaintiffs alleged that their property interests in an adequate police investigation had been denied without due process.  *See id*.  Their claim was based the Suffolk County Code, which provides that "[it] shall be the duty of the Police Department to preserve the public peace, prevent crime, detect and arrest offenders, protect the rights of persons and property and enforce all laws and ordinances applicable to the county."  *Id*. at 34 (quoting Suffolk County, N.Y., Code § C13-6).

The Second Circuit held that this provision "does not create a constitutionally protected property interest."  *Id*. Central to the court's decision was the wide discretion vested in police

---

[1]    *Harrington* was decided two years after this court denied the City's motion to dismiss (*see* DE 18), and the court's decision therefore does not address *Harrington's* holding.

officials to investigate possible crimes:  "[T]he duty to investigate criminal acts (or possible criminal acts) almost always involves a significant level of law enforcement discretion."  *Id*. at 35 (citing *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 760 (2005)).  Even though the local code appeared to set forth mandatory police duties, the court recognized that its language did not strip the police of discretion in conducting investigations.  "[F]or a number of reasons, including their legislative history, insufficient resources and sheer physical impossibility, … [mandatory statutes] clearly do not mean that a police officer may not lawfully decline to make an arrest." *Id*. (citing *Castle Rock*, *supra*).  Because the Suffolk County Code granted discretion to the police "in enforcing the law [and] investigating possible criminal acts," the Code "does not give plaintiffs or any other victim of a crime 'a legitimate claim of entitlement' to a police investigation, much less an investigation conforming with certain minimal standards."  *Id*. (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Although *Harrington* addressed a due process claim, not an equal protection claim, we submit that its reasoning is persuasive here.  In *Harrington*, plaintiffs claimed an entitlement to a police investigation based on provisions of local law requiring the police to investigate crimes. Here, plaintiff Elle Carmichael claims the same entitlement, except based on the internal provisions of the NYPD Patrol Guide, which have less authority than local laws and generally confer no rights upon citizens.  *See, e.g., Galapo v. City of New York*, 568, 574-5 (1995) ("The Patrol Guide is an internal manual … containing thousands of rules, procedures and policies adopted by the Police Commissioner for the governance, discipline, administration and guidance of the Police Department …. It is not a body of law or regulation establishing clear legal duties that should serve as a basis for civil liability of municipalities").

In *Harrington*, the plaintiffs sought to hold the county liable for its police officers' exercising discretion in investigating their son's auto accident.  Here, similarly, plaintiff seeks to hold the City liable for its officers' exercising discretion in deciding not to investigate immediately her report that her daughter was missing.  She relies on a different provision of the Fourteenth Amendment – the equal protection clause instead of the due process clause.  But the end result she seeks is the same, viz., to hold the government liable for a police investigation that did not "conform[] with certain minimum standards."  *See Harrington*, 607 F.3d at 35.  The Second Circuit, however, has demonstrated extreme reluctance to venture into this area, which would entangle the federal courts in second-guessing the allocation of scarce police resources. *Id*. at 34 (police must have discretion because they may have "insufficient resources" to investigate every complaint, and because of the "sheer physical impossibility" of enforcing every single law and rule without discretion).

*Yick Wo*, on which this court relied previously, raises none of these concerns.  Rather, in *Yick Wo*, the coercive power of the state was brought to bear in order to deprive a racial minority of the right to earn a living.  Every single Chinese application for a laundry permit was denied, whereas every single non-Chinese application, except one, was granted.  The state effectively adopted a mandatory, non-discretionary, discriminatory regime to deprive every member of one minority a privilege granted to every other group.  *See Yick Wo*, 118 U.S. at 374-5.  No colorable argument could be made in *Yick Wo* that the granting of laundry licenses was the result of discretion exercised in specific cases.  The opposite is true here:  The NYPD's decision not to open an immediate investigation into Elle Carmichael's complaint was an exercise of discretion in the circumstances of this case, bringing the facts here much closer to *Harrington* than *Yick Wo*.  Again, we have not found any authorities holding that the alleged failure of the police to

prevent the commission of a crime can ever support a Section 1983 lawsuit.  For these additional

reasons, the complaint should be dismissed.

IV.   **Plaintiff's Equal Protection Claim Should be Dismissed on the Merits**

Apart from the foregoing arguments, plaintiff's Equal Protection claims should be

dismissed on the merits.  Plaintiff cannot satisfy the elements of the underlying violation; nor can

she prove that any purported City policy of discrimination with regard to black missing persons

exists; nor can she prove that any such policy caused her daughter's tragic death.

A.   **Plaintiff Cannot Prove an Underlying**
**Violation of the Equal Protection Clause**

In order to hold the City liable, plaintiff must first demonstrate that an individual, state

actor violated her constitutional rights.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)

(where plaintiff could not prove an underlying constitutional violation, he could not prevail on

Monell claim as a matter of law); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)

("[b]ecause the district court properly found no underlying constitutional violation, its decision

not to address the municipal defendants' liability under Monell was entirely correct").  In order

to show the underlying violation, moreover, plaintiff must show that an individual City employee

acted with the requisite state of mind.  *See Brown*, 520 U.S. at 407 (in order to prove Monell

liability, plaintiff must first show that an employee exhibited "the state of mind required to

establish the underlying constitutional violation") (citation omitted).  Plaintiff cannot do so here.

"The central purpose of the Equal Protection Clause is the prevention of official conduct

discriminating on the basis of race."  *DeStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012)

(citations and internal quotes omitted).  In order to prevail, the plaintiff must show that the

individuals who violated her rights acted with "racially discriminatory intent or purpose."  *Id.*

(citations omitted); *see also Gant v. Wallingford Board of Education*, 195 F.3d 134, 139 (2d Cir.

1999) ("proof of racially discriminatory intent is required").  In this Section 1983 lawsuit,
plaintiff cannot rely on the "disparate impact" theory that may apply in Title VII employment
discrimination suits.  *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) ("[E]qual protection
claims under § 1983 cannot be based solely on the disparate impact of a facially neutral policy
…. [Instead], proof of racially discriminatory intent or purpose is required to show a violation of
the Equal Protection Clause") (citations omitted).

Plaintiff can adduce no evidence whatsoever that the City employees to whom she
reported her complaints - Police Officer Richardson, Detective Henn, a detective named
"Hutchinson," or anyone else - decided not to investigate the complaint because she, or her
daughter, was black.  All of the available evidence indicates that these individual officers
concluded that Ms. Moore's going out on a Thursday night and not coming back home as of
Friday, or Saturday, did not require an immediate investigation under NYPD guidelines (Rule
56.1 Stmt., ¶¶ 17-18, 22, 28; *see also* Exhibit C).  To the extent plaintiff would rely on statistics
alone (*see* Exhibit H), the circuit has squarely held that statistics cannot substitute for evidence of
discriminatory intent by an individual actor, which is a prerequisite to an Equal Protection claim.
*Reynolds*, 685 F.3d at 204-5 (statistics cannot support an inference of intentional discrimination;
any other rule would "contravene well-established precedent that proof of racially discriminatory
intent or purpose is required to show a violation of the Equal Protection clause") (citation and
internal quotes omitted).

In addition to proving intentional discrimination, plaintiff must establish that "[s]he was
treated differently than others similarly situated …."  *Five Borough Bicycle Club v. City of New
York*, 684 F. Supp. 2d 423, 438 (S.D.N.Y. 2010) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*,
273 F.3d 494, 499 (2d Cir. 2001)); *Miner v. Clinton County*, 541 F.3d 464, 474 (2d Cir. 2008)

("To maintain an equal protection claim, plaintiffs were required to show adverse treatment of individuals compared with other similarly situated individuals and that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person") (citations and internal quotes omitted).  Plaintiff will argue that one other person, a Caucasian woman named Svetlana Aronov - who lived in Manhattan and who disappeared one month before Ms. Moore did - was "similarly situated" to her daughter Romona Moore, but was treated differently. We submit that plaintiff cannot meet her burden using the Aronov case, however.

First, Ms. Aronov was not "similarly situated" to Romona Moore.  She was a 44-year old married woman, not living with her parents, who left the house <u>with</u> the couple's dog and did not return.  The objective fact that Ms. Aronov took the dog for a walk strongly suggested that she intended to return home within a reasonably short period of time, and her absence therefore appeared to be suspicious.  In the judgment of police investigators, Ms. Aronov's disappearance met the Patrol Guide test for classification as a "missing person," i.e., "absent under circumstances indicating unaccountable or involuntary disappearance" (<u>Exhibit C</u>, at page 1). Ms. Moore, in contrast, was a 21-year old college student with a boyfriend, who went out on a Thursday night and did not come home.  (Rule 56.1 Statement, ¶¶ 3-6)  Assuming <u>arguendo</u> that police officers had any constitutional duty to investigate Ms. Moore's disappearance - which, as shown above, they did not - the facts of her case were not similar to those of the Aronov case.

Second, even if the Aronov case is somehow deemed similar, plaintiff cannot show that any decision-maker involved in the Romona Moore case knew about the Aronov disappearance, and despite this knowledge, treated Ms. Moore's disappearance differently, with an intent to discriminate against her.  The Aronov case, therefore, cannot support the inference that any

- 14 -

police officer engaged in purposeful discrimination against Ms. Moore. *See Reynolds*, 685 F.3d at 204 (plaintiff must "raise a prima facie inference of individual discriminatory intent"); *cf. Albert v. Carovano*, 851 F.2d 561, 573-74 (2d Cir. 1988) (plaintiff must prove "reasonably comparable cases" and knowledge of those cases by decision-makers).[2]  Plaintiff cannot point to any other similarly situated missing persons, and therefore falls far short in meeting her burden of proof here.

### B.       Plaintiff Cannot Establish a Municipal "Policy" or "Custom"

As noted above, the City - the only defendant on plaintiff's constitutional claims - cannot be liable in *respondeat* for the actions of its employees.  Rather, the City can only be held liable "for its own illegal acts."  *Cash*, 654 F.3d at 333 (citations omitted).  "A section 1983 action may be maintained based on a [government] practice that was so persistent or widespread as to constitute a custom or usage with the force of law."  *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006) (citations and internal quotes omitted).  "The alleged custom or practice need not be embodied in a rule or regulation, [but] must be so manifest as to imply the constructive acquiescence of senior policy-making officials."  *Id*. (citations and internal quotes omitted). Although the complaint does not describe the custom or policy on which plaintiff bases her claims, it appears that plaintiff will assert that the City engages in a practice of not promptly investigating complaints of missing persons brought by black citizens.  The only evidence on which plaintiff relies is the purported statistical analysis of an economist (*see* Exhibit H).

Viewed most generously to plaintiff, the only conclusion that her economist draws is that blacks are slightly underrepresented in the raw data of the City's missing persons database for the time period January 1, 2000, through May 1, 2003.  (*See id*. [Reply Expert Report], at page 4

---

[2]       In *Albert*, plaintiffs brought an equal protection claim under Section 1981, but the standard for that claim is substantially the same as that for a Fourteenth Amendment equal protection claim (*see* Point V, *infra*).

(blacks would be expected to constitute 57.3 percent of missing persons in Brooklyn, whereas the data shows that blacks constitute 52.8 percent)).  Plaintiff's expert has not done any analysis, however, of the likely causes of what he claims is a small statistical disparity.  He has included no controls for variables that could account for why the expected figure would be 57.3 percent, but is instead 52.8 percent.  In these circumstances, his opinion cannot support the inference that racial discrimination is the cause of the alleged disparity.

It is well-established that "[s]tatistical analyses must control for relevant variables to permit reliable inferences."  *Ackerman v. Oryx Communications, Inc.*, 810 F.2d 336, 343 (2d Cir. 1987).  Any raw numerical comparisons of data must include some analysis of factors that could account for differences or disparities, in order to explain those disparities and their causes.  *See id.* (comparison of one company's stock price to OTC market price fluctuations was meaningless absent any analysis of  "the countless variables that might affect the stock price performance of a single company").  Without controls or some consideration of the variables that could affect the raw data, the simple number of black missing persons cases in the data mean nothing, especially since the statistical variation appears to be small.

Furthermore, plaintiff's claim is that the City does not promptly <u>investigate</u> complaints about black missing persons, whereas the City promptly investigates complaints about white missing persons.  Plaintiff has offered no analysis of data suggesting that there is a longer time lag between the commencement of investigations of reports of black missing persons as compared to reports of white (or other) missing persons.  Plaintiff's purported expert opinion, therefore, is irrelevant and inadmissible.  Fed. R. Evid. 702; *see generally Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) (expert testimony must be "relevant [and] reliable" in order to be admitted).  To the extent plaintiff would argue that her expert opinion

- 16 -

supports an inference that the City has adopted a widespread, de facto policy of delaying investigations of black missing persons reports, she would be asking the jury to speculate based on the expert's opinion, which the jury cannot do.  *See Boucher v. Suzuki Motor Corp*. 73 F.3d 18, 21 (2d Cir. 1996) ("expert testimony should be excluded if it is speculative or conjectural").

Apart from her statistics expert report, plaintiff only offers the comparison of her case to that of Svetlana Aronov to support her claim that the City has adopted a "widespread" pattern of delaying investigations into black missing persons cases.  Even if plaintiff's argument had merit, however, "evidence of one instance" of alleged discrimination is not enough to support her Monell claim and cannot defeat summary judgment here.  *See Green*, 465 F.3d at 80.[3]

### C.    **Plaintiff Cannot Prove Causation**

It is well-settled that "common law principles of tort," including proximate causation, are applicable to Section 1983 claims.  *Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007) (citations omitted).  Section 1983 jurisprudence recognizes superseding, intervening causes as grounds for dismissal of claims against the City and its police officers, where appropriate.  *See id.* at 193-4 (fully informed decision of trial judge to admit suggestive identification procedure constitutes intervening cause of injury in lawsuit against police officers).  The unforeseeable criminal conduct of third parties, moreover, is frequently recognized as a superseding, intervening cause in tort cases.  *E.g., Kazanoff v. United States*, 945 F.2d 32, 39 (2d Cir. 1991) (criminal conduct of two men who committed burglary and murder); *Santiago v. New York City Housing Authority*, 63 N.Y.2d 761, 763 (1984) (intervening criminal act  served to "break the causal connection" between the defendant's negligence and the plaintiff's injuries).  In the circumstances here, as a matter of law, the criminal conduct of Pearson and Hendrix was an

---

[3]    The statistical "evidence" of discrimination that plaintiff offers here is a far cry from the stark proof of the policy of discrimination offered by the *Yick Wo* plaintiffs.  *See Yick Wo*, 118 U.S. at 373-74.

independent, superseding cause of the injury for which plaintiff now sues, and the City cannot be held responsible for that conduct on any theory.

Plaintiff attempts to prove causation though her canine "expert," Lisa Harvey, a dog hobbyist who has no training at any law enforcement academy and has never worked as a police officer. She currently teaches biology at a community college in California. Ms. Harvey opines that if the police had utilized a bloodhound promptly, they would have found Romona Moore. (Exhibit I [Harvey Report]) She believes that if a bloodhound had been presented with an uncontaminated scent article shortly after Ms. Moore disappeared, the bloodhound would have trailed the scent to 5807 Snyder Avenue, where Ms. Moore had been kidnapped and killed. At deposition, however, when asked specific question about which direction a police canine would have walked if presented with the scent article, and how long it would have taken the dog to find Ms. Moore, Ms. Harvey admitted that she did not know the answers to these questions. (Exhibit J) Her opinion, therefore, is speculative and inadmissible. *See Boucher*, 73 F.3d at 21.

We are aware of no authorities permitting a canine expert to testify to an opinion of this sort, i.e., that if a bloodhound were used on a particular occasion, the bloodhound would have found a missing person, or a suspect, or narcotics, or anything else. On the contrary, the federal courts have set minimum standards for the admission of bloodhound evidence, and plaintiff's purported expert opinion falls far short of those standards. In particular, the bloodhound must be shown to have a reliable track record and the handler must establish that proper procedures were followed in utilizing the dog. *See, e.g., Grant v. City of Long Beach*, 315 F.3d 1081 (9th Cir. 2002), *as amended*, 2003 Cal. Daily Op. Service 5670, *14-16 (9th Cir. 2003) (citing cases). Here, plaintiff's "expert" proposes to testify not about a known bloodhound with a reliable record employed according to certain procedures (in which case minimum standards of reliability

- 18 -

would have to be met), but instead, she proposes to testify about the hypothetical use of an unknown bloodhound with an unknown track record.  Furthermore, she proposes to tell the jury the likely <u>result</u> of the hypothetical bloodhound's hypothetical trail for the scent of a missing person.  We submit that these opinions are not admissible under Fed. R. Evid. 702 or *Daubert*, on the grounds that they are rank speculation, *see Boucher*, 73 F.3d at 21, and fail to meet minimum standards of admissibility.

V.    <u>Any Claim Brought Under Section 1981 Should Also be Dismissed</u>

The court's prior decision denying the City's motion to dismiss held that plaintiff could pursue an equal protection claim.  (DE 18)  To the extent the equal protection claim is asserted under Section 1981, not the Fourteenth Amendment through Section 1983, we submit that the claim likewise should be dismissed.  In order to prevail on her Section 1981 claim, plaintiff must plead and prove (1) that she is a "member[] of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities," including "the full and equal benefit of all laws."  *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 1999).  This standard is substantially the same as that under the Equal Protection Clause of the Fourteenth Amendment.  *See id.* (noting "the same pleading standard" for both Section 1981 and Fourteenth Amendment equal protection claim); *see also Reynolds*, 685 F.3d at 201 ("a plaintiff pursuing a claimed violation of § 1981 or a denial of equal protection under § 1983 must show that the discrimination was intentional") (citation and internal quotes omitted); *cf. Albert*, 851 F.2d at 573 ( in order to succeed on a Section 1981 claim, plaintiff must plead and prove "purposeful and systematic discrimination by specifying instances in which they were singled out for unlawful oppression in contrast to others *similarly situated*") (emphasis in original).

- 19 -

Furthermore, municipal liability under Section 1981 "cannot … be premised on a theory *of respondeat superior*," but is permitted only if plaintiff proves that "the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citations omitted). This standard is the same as that for municipal liability under Section 1983. *Id.* (citing cases). For the same reasons as those set forth above, we submit that any claim asserted by plaintiff under Section 1981 should also be dismissed.[4]

## Conclusion

For the foregoing reasons, defendants' motion should be granted in its entirety.

Dated:     New York, New York
           February 22, 2013


                              Respectfully submitted,

                              MICHAEL A. CARDOZO
                              Corporation Counsel of the City of New York
                              Attorney for Defendants
                              100 Church Street
                              New York, New York 10007
                              (212) 788-1599


                              By:    _____
                                              /s/
                                     Arthur G. Larkin (AL 9059)

---

[4]        In this circuit, "no state action" is required for a claim brought under Section 1981. *Phillip v. University of Rochester*, 316 F.3d 291, 294 (2d Cir. 2003). Plaintiff, therefore, could sue a private party for violations of Section 1981, but she could not hold the City, a municipal defendant, liable for the acts of any such private party. *See id.*